IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 6, 2004

## STATE OF TENNESSEE v. CLIFTON BROWN

**Direct Appeal from the Circuit Court for Maury County**
**No. 12427     Robert L. Jones, Judge**

_____

**No. M2003-00853-CCA-R3-CD - Filed April 12, 2004**

_____

Defendant, Clifton Brown, was indicted on one count of first degree felony murder of John Maupin, one count of premeditated first degree murder of John Maupin, one count of aggravated burglary of Ricky Howard's home, and one count of especially aggravated kidnapping of John Maupin. Prior to the case going to the jury, the State asked for and received a nolle prosequi as to the charge of premeditated first degree murder. Following a jury trial, Defendant was found guilty of especially aggravated kidnapping and aggravated burglary. The jury found Defendant not guilty of first degree felony murder, and found Defendant guilty of the lesser included offense of reckless homicide. Defendant waived a sentencing hearing and agreed to be sentenced as a Range I, standard offender, to twenty years for the especially aggravated kidnapping conviction, three years for the aggravated burglary conviction and two years for the reckless homicide conviction, with all sentences to run concurrently. Defendant appealed the sufficiency of the convicting evidence for all three convictions. In his brief, however, Defendant limits his argument on appeal to the sufficiency of the evidence pertaining to his conviction for especially aggravated kidnapping, and Defendant does not present any argument to support his contention that the evidence was insufficient to sustain his convictions for reckless homicide and aggravated burglary. Defendant has thus waived a review of the issues pertaining to his aggravated burglary and reckless homicide convictions. Tenn. R. Crim. P. 10(b). After a thorough review of the record, we affirm all three judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Clifton Brown.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Mike Bottoms, District Attorney General; Larry Nickell, Assistant District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Ricky Howard testified that Defendant, Fontain White, and Courtney Shyes arrived at his trailer around 10:00 p.m. on September 12, 1999. Mr. Maupin was at the trailer with Mr. Howard. Mr. Shyes was armed with a 12-gauge shotgun and Defendant carried a semi-automatic rifle. Mr. White was not armed. The men were looking for the money, drugs and guns which had been stolen from Mr. Shyes and Mr. White. Defendant and Mr. Shyes struck Mr. Maupin and Mr. Howard a few times with their fists, feet and guns. When Mr. Shyes did not find any of his property in the trailer, he made the two men take off their shoes and walk outside. All five men got into Mr. White's vehicle. Mr. Howard, Mr. Maupin and Mr. Shyes sat in the backseat, and Mr. Shyes held his shotgun on Mr. Maupin during the ride. Mr. White drove, and Defendant rode in the passenger seat pointing his rifle toward the back seat.

Mr. White drove to a secluded wooded area, and Mr. Howard and Mr. Maupin were ordered out of the vehicle. Mr. Howard said that Mr. Maupin hesitated because he was scared, and Defendant told Mr. Maupin that if he did not get out of the vehicle he was going to "start spraying" the victims with his rifle. Mr. Howard said that both Defendant and Mr. Shyes started beating him and Mr. Maupin with their feet and guns once they were out of the vehicle although Mr. Maupin bore the brunt of the attack. At some point, Defendant and Mr. Shyes discussed what they should do with the victims. Defendant wanted to kill the two men, but Mr. Shyes was in favor of simply shooting them in the legs and forcing them to walk back to town. Defendant and Mr. Shyes then decided that Mr. Shyes' property was not at Mr. Howard's trailer in the first place, but at Mr. Maupin's house, and the five men got back into Mr. White's vehicle. Defendant and Mr. Shyes held their guns on Mr. Howard and Mr. Maupin on the trip to Mr. Maupin's house.

Mr. Howard said that Defendant, Mr. Shyes and Mr. Maupin went up to the front door of Mr. Maupin's house while he remained near the vehicle with Mr. White. Mr. Shyes pushed Mr. Maupin out of the way and entered the house. Defendant stood on the front porch and fired off his rifle a few times. At that point, Kelvin Frierson and Al Green walked up to the group. Mr. Frierson grabbed Mr. Shyes' shotgun and shot Mr. Maupin in the groin. Defendant and Mr. Frierson ran off together while Mr. Shyes and Mr. White drove off in Mr. White's vehicle. Mr. Howard stayed with Mr. Maupin until the police arrived. Mr. Howard said that he left town after the shooting because his mother received a note saying that she and Mr. Howard's sister were "next" if Mr. Howard did not leave. Mr. Howard admitted that he committed three robberies in order to finance his trip.

On cross-examination, Mr. Howard admitted that he and Mr. Maupin had been smoking marijuana all day. He said that Mr. Shyes appeared to be in charge of the group and probably thought that Mr. Maupin had his property because he and Mr. Maupin made their living by stealing. Mr. Howard said that he did not think that Defendant and Mr. Shyes intended to kill Mr. Maupin because they could have done so while the men were in the woods.

Mr. Shyes testified on behalf of the State as part of his plea agreement. Mr. Shyes said that he and Defendant were as close as brothers and insisted that Defendant was only a bystander during

the episode. Mr. Shyes said that he went to Defendant's house at the beginning of the evening to retrieve his gun. Defendant then went with him and Mr. White to find Mr. Maupin, but Mr. Shyes said that Defendant was not armed. Mr. Shyes said that he was the only one with a weapon and that he alone struck Mr. Maupin and Mr. Howard while they were in Mr. Howard's trailer and in the woods. According to Mr. Shyes, Defendant only watched. Mr. Shyes said that Mr. Frierson and Mr. Green drove up while the men were at Mr. Maupin's house. Mr. Frierson and Mr. Green parked the car and walked up to the group. Mr. Frierson asked to see Mr. Shyes' gun and then shot Mr. Maupin.

On cross-examination, Mr. Shyes said that it was his idea, not Defendant's, to go find Mr. Maupin. He said that when they arrived at Mr. Maupin's house, Defendant went up to the front door while he and Mr. Maupin remained in the street. Mr. Shyes said that he had run into Mr. Frierson and Mr. Green before they went to Mr. Howard's trailer and told them he was looking for Mr. Maupin. Mr. Shyes asked Mr. Green to go to Mr. Maupin's house and see if he was home, but both Mr. Frierson and Mr. Green said they did not want to have anything to do with Mr. Shyes' plans. Mr. Shyes denied that he intended to kill Mr. Maupin. He said that he only wanted to scare him so Mr. Maupin would disclose the location of his stolen property. Mr. Shyes conceded that he was released on bond after he was arrested. He confirmed that Mr. Green testified against him at the preliminary hearing, that someone shot up Mr. Green's house two days later, and that Mr. Green had not been seen in town since that incident.

On redirect, Mr. Shyes insisted that only one shot was fired that night by Mr. Frierson when he killed Mr. Maupin.

Mr. White also testified as part of his plea agreement with the State. Mr. White confirmed that he and Mr. Shyes went to Defendant's house to retrieve Mr. Shyes' gun. He testified, however, that Defendant was armed with a semi-automatic rifle when he joined the two men. Mr. White said that they tried to enlist Mr. Green's assistance that night, but Mr. Green said that he did not want to get involved. Mr. White denied that Mr. Maupin and Mr. Howard were struck while they were at Mr. Howard's trailer, but conceded that both Defendant and Mr. Shyes "roughed up" the victims in the woods. Mr. White said that both Mr. Shyes and Defendant still had their guns when they arrived at Mr. Maupin's house.

Mr. White said that Mr. Green first came down the street, saw the men, and went back up the hill. When Mr. Green returned, Mr. Frierson was with him. Mr. Frierson said they should take Mr. Maupin and Mr. Howard to the crack house and shoot them. Mr. Frierson then snatched Mr. Shyes' shotgun and shot Mr. Maupin. Mr. Frierson gave the gun back to Mr. Shyes before he ran.

On cross-examination, Mr. White said that both he and Mr. Shyes had heard on the street that Mr. Maupin was responsible for stealing their property. Mr. White said that Mr. Shyes was in charge of the operation and that Defendant volunteered to accompany them. Mr. White said that he was not armed that evening. Mr. White denied that he saw Mr. Frierson earlier in the evening. Mr. White said that either Mr. Shyes' shotgun or Defendant's rifle was pointed at Mr. Maupin during the whole incident. Mr. Maupin went to his front door alone while Mr. Shyes remained at the bottom of the

steps with his gun pointed at Mr. Maupin's back. Mr. White said that nobody came out of Mr. Maupin's house. Defendant fired a round of shots over the house and then Mr. Frierson shot once at Mr. Maupin. Mr. Frierson gave the shotgun back to Mr. Shyes before he ran.

Jason Dart, a police officer with the Columbia Police Department, was responding to another call in the neighborhood when he heard four or five shots fired. He drove his patrol car in the direction of the shots and found Mr. Maupin lying in the street. Mr. Maupin was conscious but bleeding profusely.

Jake Morbit, also an officer with the Columbia Police Department, heard ten to fifteen shots and then one shot from a different caliber gun. When he arrived at the scene, Officer Morbit tied a makeshift tourniquet around Mr. Maupin's leg. He said that Mr. Maupin was conscious but unable to speak. Officer Morbit found several rifle casings on the ground in front of the house and one spent shotgun shell. Several bullet holes in the facade of the house indicated that bullets which had struck the interior walls were shot from outside the house.

Bruce Levy, the Davidson County medical examiner, performed Mr. Maupin's autopsy. Dr. Levy noted the presence of several abrasions and scrapes on Mr. Maupin's forehead and bruising around his mouth. The cause of death, however, was a gunshot wound to the groin. The shotgun shell contained buckshot, and approximately seven pellets pierced Mr. Maupin's right leg, scrotum and left leg. The pellets tore the femoral artery and vein, and Mr. Maupin essentially bled to death. Dr. Levy stated that death could be anticipated from this type of wound. Dr. Levy estimated that the shooter was standing between three to five feet away from the victim. On redirect, Dr. Levy said that Mr. Maupin had ingested cocaine at least ninety minutes before his death.

Tavorris Davis testified that he had known Mr. Frierson since they were ten years old. The day of the shooting was also Mr. Davis' twenty-first birthday. Mr. Frierson and Mr. Green came over to Mr. Davis' house for a cookout. After dinner, the three men drove around to various nightclubs and ended up standing on a street corner, drinking. Mr. Green left the two men for about fifteen or twenty minutes. When he returned, Mr. Green said something to Mr. Frierson, and they went down the street. Mr. Davis, who had remained at the street corner, heard about three gunshots, and Mr. Green and Mr. Frierson came running back. Mr. Frierson told Mr. Davis that "Block" had shot a man. "Block" was Mr. Shyes' nickname. Mr. Frierson and Mr. Davis drove away in Mr. Davis' car, and Mr. Green left in his girlfriend's car.

Mr. Frierson, Defendant's co-defendant, testified that he had known Mr. White and Mr. Shyes about six or seven years and had gone to school with Mr. Howard. He knew who Mr. Maupin was but they were not friends. Mr. Frierson said that Mr. Shyes and Mr. White drove by earlier in the day before the shooting and asked him and Mr. Green if they knew anything about Mr. Maupin. Mr. Frierson and Mr. Green told Mr. Shyes that they did not want to get involved, and Mr. White drove away. Mr. Frierson could not see whether or not Defendant was in the vehicle because the windows were tinted black.

After the cookout at Mr. Davis' house, Mr. Frierson, Mr. Green and Mr. Davis drove around and then returned to Columbia. They sat on the hood of Mr. Davis' car and talked. Mr. Green left and returned with a car. Mr. Green told Mr. Frierson that some men had some other men at gunpoint, and they walked down the street to see what was happening.

Mr. Frierson said he saw Mr. Shyes standing in front of Mr. Maupin holding his shotgun at waist level but pointed away from Mr. Maupin. Mr. White was standing by his vehicle. Mr. Frierson said that he thought he saw Mr. Howard but did not see Defendant. When he reached the bottom of the hill, several shots were fired followed by one larger "boom." Mr. Frierson saw Mr. Maupin slump over before he ran but did not actually see who fired the shot that killed Mr. Maupin. Mr. Frierson said he did not know he was being blamed for Mr. Maupin's death until he was arrested. Based on the evidence presented at trial, the jury found Mr. Frierson not guilty of first degree premeditated murder.

On appeal, Defendant argues that the evidence was insufficient to support his conviction for especially aggravated kidnapping. Relying on Mr. Shyes testimony, Defendant contends that the evidence does not support a finding that he was armed during the incident. In the alternative, Defendant argues that the evidence at best supports only a finding that he was in possession of a weapon and his conviction should be reduced to aggravated kidnapping, a Class B felony.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the State in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

Especially aggravated kidnapping is a false imprisonment "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1). False imprisonment is defined as the knowing removal or confinement of another unlawfully so as to substantially interfere with the other person's liberty. *Id*. § 39-13-302(a). As used in the kidnapping statutes, unlawful means "accomplished by force, threat, or fraud." *Id.* § 39-13-301(2).

Defendant's argument essentially rests upon an assessment of the witnesses' credibility which is entrusted to the jury, not this Court. *Bland*, 958 S.W.2d at 659. Although Mr. Shyes testified that

Defendant was unarmed, both Mr. Howard and Mr. White testified that Defendant carried a semiautomatic rifle during the ordeal. Mr. Howard testified that three men burst into his trailer when he answered the door, including Defendant. While the men were in the trailer, Mr. Shyes and Defendant kicked Mr. Maupin and struck him with their guns. Mr. Howard and Mr. Maupin were forced out of the trailer at gunpoint and into Mr. White's vehicle. Mr. Howard testified that Defendant sat in the front passenger seat of Mr. White's vehicle on the way to the woods and kept his rifle pointed toward the backseat where the victims sat. When they arrived at the woods, Defendant forced Mr. Maupin out of the vehicle by threatening to shoot him if he did not get out. Mr. White said that Defendant had a gun in the woods and admitted that the guns were pointed at Mr. Maupin almost the entire time of the ordeal. Mr. Howard and Mr. White testified that Defendant had a gun when the group returned to Mr. Maupin's house and that Defendant fired his rifle several times in the direction of the house.

Viewing the evidence in a light most favorable to the state, we conclude that the jury could have found beyond a reasonable doubt that Defendant was guilty of especially aggravated kidnapping. Defendant is not entitled to relief on this issue.

## CONCLUSION

Following a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE